In the Matter of the Estate of JACOB SOBEL, Deceased.

Surrogate's Court, New York County, June 21, 1940.

*Morse S. Hirsch*, for the executrix.

*Herman & Ernst* [*Harry E. Herman* of counsel], for the objectants.

*Edward J. McGoldrick, Jr.*, special guardian for infants.

DELEHANTY, S. The objections of the children of deceased by a first marriage to the account of their stepmother as executrix of the will raise issue chiefly respecting the failure of the account to include in deceased's assets certain securities and moneys alleged to be his. At the hearing objections numbered 6, 8, 10, 11 and 12 were withdrawn.

Objection 7 was sustained by consent so far as the item objected to is dealt with as a proper deduction in Schedule D, but there is reserved by the accounting party the right to list the same disbursement as part of the quarantine claimed by her. These dispositions leave for consideration certain litigated objections.

Objections 1 and 2 relate to a Home Owners Loan Corporation bond for the sum of $5,000 and a coupon due thereon under date

November 1, 1938, which is the date of deceased's death. The proof sufficiently shows that prior to deceased's death this bond had been in his safe deposit box, to which he alone had access. The proof also shows that prior to deceased's death he visited his box with his wife and was present when she opened a separate box of her own in the same institution. He and his wife were closeted in a room in the safe deposit company's office with both boxes at their command therein. At the time of death the bond was not found in deceased's own box. It was produced by the executrix. There were proved some conflicting declarations of deceased respecting this bond. On the whole proof the court finds that a transfer of it had been made to the accounting party individually by deceased in his lifetime. Accordingly objections 1 and 2 are overruled.

Objection 3 raises issue as to the disposition of funds which were withdrawn from a savings bank account in the name of deceased and deposited three days before deceased's death in a joint bank account of deceased and his wife in a commercial bank. The court holds that this money was the property of deceased and that the joint form of the account in the commercial bank was for his convenience only and that there existed no right of survivorship in the surviving widow. The objection is sustained to the extent of requiring the inclusion in estate assets of the net balance in this account after the deduction of checks which concededly were paid for or on account of deceased. If the parties cannot agree upon the balance to be accounted for, the court will restore the matter to the calendar for further hearing.

Objection 4 raises issue as to the ownership of two certain mortgages concededly at one time owned by deceased and concededly referred to in assignments of mortgage executed by deceased in his lifetime. The court holds on the entire proof that a sufficient showing of delivery of the assignments has been made and consequently holds that there was a transfer of title to these mortgages by deceased in his lifetime to his widow as an individual. The objection accordingly is overruled.

Objection 5 raises issue as to the liability of the accounting party for rents collected by her from real properties owned by deceased. The proof sufficiently shows that the net amount received was used in the household of deceased and that no balance is in the hands of the accounting party as an asset of deceased. Accordingly the objection is overruled.

Objection 9 refers to four items which are listed in Schedule D-2 of the account. The objection is pressed only as to the payment to a physician and a nurse. The objection is overruled so far as the payment to the nurse is concerned. The court holds that there

was no adequate showing that the amount claimed to have been paid was in fact a debt of deceased. The item is listed in the account at sixty-three dollars. It is pressed in the brief at only thirty-three dollars. This balance the court disallows. The objection is sustained to this extent.

Objection 13 presents an issue of law as to whether the widow of deceased is entitled to certain sums aggregating $222.62 which she claims under Schedule I as quarantine. By an amendment of the account which disposed of objection 7 there is to be added to this sum the further sum of sixty-five dollars which is listed in Schedule D. General objection is made to this claim of quarantine on the ground that the widow of deceased " is not entitled to the said items." The record is bare of any showing as to when deceased acquired a certain parcel of real property of the tenement house class which he rented out to other persons. It may be assumed for the sake of discussion that his acquisition of the property antedated the legislation which abolished dower. This is the only property of deceased in respect of which a dower claim could exist. It is clear on the record that deceased was not living in the premises which he owned but that on the contrary he occupied with his wife an apartment leased by him in premises owned by another person. The proof is that after his death his widow continued for a time at least to reside in the apartment which was the matrimonial domicile.

The question presented is whether quarantine is allowable in such circumstances. The statutory provision for quarantine is found in article 6 of the Real Property Law which is entitled " Dower and Curtesy." Section 204 of the Real Property Law says: " A widow may remain in the chief house of her husband forty days after his death, whether her dower is sooner assigned to her or not, without being liable to any rent for the same; and in the meantime she may have her reasonable sustenance out of the estate of her husband." This text is identical with that found in the 1829 Revised Statutes, except that the word " remain " now found in the section was originally " tarry," the word " is " was originally " be " and the word " may " in the last phrase was originally " shall." The text of the Revised Statutes in turn had its historical beginning in the English common law. In Coke on Littleton (34-b) the commentator refers to the origin of quarantine thus: " For albeit the law hath provided, *quod vidua post mortem mariti sui non det aliquid pro dote sua, et maneat in capitali mesuagio mariti sui per quadraginta dies post obitum mariti sui, infra quos dies assignetur ei dos sua, nisi prius ei assignata fuerit, &c. et habeat rationable estoverium suum interim in communi,* yet because there was no penalty or punishment inflicted, the tenant of the land may drive

her to sue for her dower. And this continuance of the widow in the capital messuage, is in law called a quarantine, *quarentina*, for that it is by the space of forty days, as is aforesaid." In his Institutes (2 Inst. 16–17) Coke comments on the text of Magna Charta dealing with quarantine and, after having made it clear that the right of the widow to stay in the chief house of her husband for forty days was limited by the requirement that she remove from his chief house if it were a castle and hence necessary for the defense of the neighborhood, he declared the law to be that " then a competent house shall be forthwith provided for her in which she may honestly dwell, until her dower be to her assigned, as it is aforesaid." In further comment on the right of quarantine, Coke continues: " But this must be a house, whereof she is dowable, for she must have her quarantine of that, whereof she may be endowed."

This limitation of the right of quarantine to property of which the widow is dowable is carried into our Real Property Law. In this and other States it has been held that the right of quarantine does not attach to leasehold property. (*Voelckner* v. *Hudson*, 3 N. Y. Super. Ct. 215; *Davis* v. *Lowden*, 56 N. J. Eq. 126; 38 A. 648; 10 Am. & Eng. Ency. of Law, [2d ed.] 149; 24 C. J. 234, § 766; 3 Schouler on Wills, [6th ed.] § 2689, and cases cited; Tiffany Real Property, [2d ed.] § 232, and cases cited.)

In addition to the stated defect in the widow's claim of quarantine, note should be made of the fact that she has elected to take benefits under this will which are inconsistent with dower and hence with quarantine. Deceased put the whole of his residuary estate in trust and directed that two-thirds of the income be paid to his widow. Under familiar authorities her right to income accrued immediately upon death and so, under the trust, she has provision for maintenance which excludes a statutory quarantine right. In the proof it was shown generally that the widow managed the funds of deceased. While the court has exonerated her from the charge that she has failed to account for rents in her possession it has not found that she was not possessed of provisions in the household nor found that she lacked necessaries. Her account shows that she has taken the furniture and $300 under section 200 of the Surrogate's Court Act. In a situation quite similar it was held that a widow was not entitled to an allowance for sustenance though the property there involved was one in which the widow had a dower interest. (*Peck* v. *Sherwood*, 56 N. Y. 615.) The report of the case is not complete but a reference to the record on appeal indicates that the surrogate had found that the widow had continued to occupy the house which was supplied with provisions and furniture and that she had some money. A comparable situation is established here.

For all of the reasons stated the objections to the claim of quarantine are sustained and the items sought as credit in the account in respect of quarantine are disallowed.

Submit, on notice, decree settling the account in accordance with the foregoing rulings.